# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ASSOCIATION OF AMERICAN<br>MEDICAL COLLEGES,<br>2450 N Street, NW<br>Washington, D.C. 20037-1127,<br><br>　　　　Plaintiff,<br><br>v.<br><br><br>THE PRINCETON REVIEW, INC.,<br>2315 Broadway<br>New York, NY 10024,<br><br>　　　　Defendant. | § § § § § § § C § § § § § § § § § | CASE NUMBER  1:03CV00716<br><br>JUDGE: Henry H. Kennedy<br><br>DECK TYPE: General Civil<br><br>DATE STAMP: 03/21/2003 |

## COMPLAINT

The Association of American Medical Colleges ("AAMC"), appearing through its undersigned counsel, alleges as follows:

### NATURE OF THE ACTION

1.　　This case involves unlawful actions that were taken by a commercial test preparation company -- defendant The Princeton Review, Inc. ("Princeton Review") -- in an attempt to compromise the confidentiality and security of the Medical College Admission Test ("MCAT"). The MCAT is a standardized test that is used by medical schools as one factor in making admission decisions. Princeton Review's unlawful actions include a so-called MCAT "tapping" program pursuant to which Princeton Review arranges to have its employees and/or agents take the MCAT in order to memorize confidential MCAT questions, which Princeton Review then assembles, copies and distributes to its instructors for use in Princeton Review

MCAT preparation classes, in violation of AAMC's copyrights and in contravention of express commitments made by examinees when they take the MCAT.

## JURISDICTION

2.     This action arises in part under the Copyright Act, 17 U.S.C. § 101 et seq.  The Court has original and exclusive jurisdiction over copyright claims pursuant to 28 U.S.C. §§ 1331 and 1338(a).

3.     The Court has original jurisdiction over AAMC's state law claims under 28 U.S.C. § 1338(b) and supplemental jurisdiction under 28 U.S.C. § 1367(a).

## VENUE

4.     Venue in this district is proper under 28 U.S.C. §§ 1391(b) and 1400(a). Defendant Princeton Review resides in this district within the meaning of Sections 1391(b) and 1400(a), and it and its agents may be found within this district.

## PARTIES

5.     AAMC is a nonprofit corporation with its principal place of business in Washington, D.C.  Among other things, AAMC develops, administers and owns all rights in and to the MCAT.

6.     Defendant Princeton Review is a Delaware corporation with its principal place of business in New York.  It also maintains an office in the District of Columbia.  Princeton Review is engaged in the business of providing test preparation courses for post-secondary and graduate admissions tests, including the MCAT.  The conduct challenged in this lawsuit occurred in connection with Princeton Review's test preparation courses for the MCAT.

30391029.2

## FACTUAL ALLEGATIONS

### The Medical College Admission Test

7.    AAMC is a non-profit association that represents the nation's 126 accredited medical schools, nearly 400 major teaching hospitals, more than 105,000 faculty in 98 academic and scientific societies, and the nation's 66,000 medical students and 97,000 residents. Among other things, AAMC develops and owns all rights in the MCAT.

8.    The MCAT assesses mastery of basic concepts in biology, chemistry, organic chemistry, and physics; facility with scientific problem solving and critical thinking; and writing skills. The skills and concepts tested by the MCAT are those identified by physicians and medical educators as prerequisites for the practice of medicine.

9.    The MCAT helps admissions committees predict which of their applicants will be successful in medical school. In general, MCAT test results are combined with other information, such as undergraduate records, references, and results of personal interviews, in making admissions decisions. Standardized MCAT test scores provide a way for admission committees to compare the qualifications of applicants from a variety of undergraduate institutions.

10.    The MCAT is given in April and August of each year at established test centers throughout the United States. The overall length of a test day is approximately nine and one-half hours.

11.    The MCAT contains 221 questions in the following four sections: Verbal Reasoning, Physical Science, Writing Sample, and Biological Sciences. The MCAT Verbal Reasoning section consists of several written passages, each accompanied by six to ten multiple-choice questions based on the information presented in the passage. The MCAT Physical

Sciences and Biological Sciences sections each consist of ten to eleven problem sets, with each problem set followed by four to eight multiple-choice questions. An additional fifteen independent multiple-choice questions are included in both the MCAT Physical Science and Biological Science section. The MCAT Writing Sample consists of two essays designed to assess an individual's skill in developing a central idea, synthesizing concepts and ideas, and presenting ideas cohesively and logically.

12.     The development of MCAT test questions and test forms is a lengthy, painstaking, and expensive process involving subject matter experts who are undergraduate faculty from one of the sciences represented on the test or the humanities. As is common in the standardized testing industry, AAMC reuses MCAT test questions on subsequent examinations for purposes of "equating" examination scores from one test form to another, and occasionally for other reasons.

13.     Each section of the MCAT contains questions that are being administered in trial form. These questions do not count towards an individual's score. They are included on the MCAT to collect representative and valid statistical information about those questions to determine if they may be used in the development of new test materials.

14.     It costs AAMC more than $250,000 to develop each MCAT test form.

15.     It is the regular practice of AAMC to register MCAT test forms and test questions (including the answer choices) with the Register of Copyrights pursuant to and in compliance with "secure test" regulations issued by the Copyright Office. The registration numbers assigned by the Copyright Office to MCAT test forms registered by AAMC include the following: TX 5-542-211, TX 5-542-207, TX 5-609-464, and TX 5-609-452.

30391029.2

-4-

16.    At all relevant times, AAMC has been the sole owner and holder of all right, title, and interest in and to the copyrights in the MCAT test forms and test questions (including the answer choices), subject only to one or more non-exclusive licenses issued by AAMC to third parties, involving non-secure test questions.  No such license has been issued to Princeton Review.

17.    The MCAT test forms and test questions (including the answer choices) are original, copyrightable materials, and AAMC has complied in all respects with the requirements of the Copyright Act, 17 U.S.C. § 101 et seq.  It therefore enjoys certain exclusive rights with respect to the test forms and the questions contained therein, including the exclusive right to copy, distribute, display, publish, and prepare derivative works.

18.    The MCAT is a "secure" test, which means that the questions are confidential and have not been previously disclosed to the general public.  A certain number of questions on each examination have appeared on prior examinations.  As noted above, questions are repeated in order to equate test scores from one test administration to another.

19.    Because they are secure examinations, MCAT test forms, test questions and test answers are not intended to be made available to the public except during actual test administrations or under such other circumstances as AAMC has authorized.  Unauthorized disclosure of secure test items can compromise the integrity of the applicable examination(s), and potentially of future examinations in which this collection of questions will be repeated; jeopardize the validity of resulting scores; potentially give some examinees an unfair advantage over other examinees, or create the appearance of such an advantage; and undermine the admissions process for U.S. medical schools.

20.     AAMC takes numerous measures to protect the secure nature of the MCAT test questions and test forms.  For example, MCAT exam proctors read the following passage aloud to all examinees before they begin the MCAT:

> The MCAT is confidential and contains copyrighted material.  You may not remove any portion of a test booklet or answer document from the testing room. In addition, you may not duplicate, record, or memorize any part of the MCAT.

21.     In addition, AAMC requires each MCAT examinee to write out in longhand and certify by signature on their answer form that they "agree to the conditions set forth in the MCAT Announcement."  The MCAT Announcement is a multi-paged booklet setting forth the required policies and procedures for taking the MCAT, and every individual who registers to take the MCAT is encouraged to read it.

22.     The MCAT Announcement includes the following language:

> The AAMC owns the MCAT.  The MCAT is a secure, nondisclosed standardized test.  It and all related test materials are copyright protected.

23.     The MCAT Announcement also sets forth the following language, under the heading "Test Center Regulations and Procedures":

> The MCAT is confidential and contains copyrighted material.  All test materials, including test books and answer documents, are the property of the MCAT Program Office and AAMC and must be returned to the test supervisor after each administration.  No portion of such materials may be retained by examinees. Pages or covers of test books are not to be torn out of or separated from the test books in any way.  Additionally, test takers are not permitted to duplicate or record (by copying, photographing, memorizing, or any other means) any part of the MCAT.

24.     In addition to these measures, AAMC attempts to prevent professional test takers from taking the MCAT for the purpose of memorizing its contents for subsequent disclosure to other persons.  The "Who May Register" section of the MCAT Announcement sets forth AAMC's policy that, absent special permission from the AAMC, only individuals who are

30391029.2

preparing to apply to a health professions school may sit for the MCAT.  In addition, at the time of testing, each examinee is required to sign a statement verifying his or her intention of applying to a health professions school.

25.     If an individual wishes to take the MCAT for any reason other than applying to a health professions school, he or she is required to apply for special permission from the AAMC. As stated in the MCAT Announcement, to apply for special permission, an individual is required to send a written request to the AAMC stating his or her reason(s) for wanting to take the MCAT.  Such requests are reviewed by AAMC on a case-by-case basis.

26.     This case involves Princeton Review's deliberate, unauthorized reconstruction and disclosure of secure MCAT test questions and answers.

**Princeton Review**

27.     Princeton Review provides test preparation courses for post-secondary and graduate admissions tests.  It was founded in 1981 by its Chairman and Chief Executive Officer, John Katzman, and it has been so successful that it is now a publicly traded company.  In 2001, Princeton Review and its franchisees provided test preparation courses and tutoring services for the MCAT, SAT, GMAT, LSAT, GRE and other standardized admission tests to more than 150,000 students in over 500 locations in the United States and abroad.

28.     Princeton Review charges individuals a fee for attempting to help improve their scores on standardized admissions tests such as the MCAT.  Princeton Review claims to enable prospective college and graduate school students to increase their scores on admissions tests through classroom-based and online courses and test preparation books and software.  The current fee for Princeton Review's full MCAT preparation course is approximately $1,400.

29.     Princeton Review has expanded into other business lines.  However, it continues to derive the majority of its revenue from its standardized test preparation and tutoring services. For the fiscal year ending December 31, 2001, Princeton Review's total revenue was $69.1 million.  Of this, the total revenue for Princeton Review's test preparation services was $53.9 million.

30.     Princeton Review's test preparation courses face competition on a national level and from local and regional companies that provide test preparation services.  Effective test preparation materials are therefore essential to Princeton Review's success and continued viability.

31.     Princeton Review fully understands the nature and importance of intellectual property rights.  In its Form 10-K for the period ended December 31, 2001 ("2001 Form 10-K"), Princeton Review stated, "Failure to protect our intellectual property could materially adversely affect our business." Princeton Review further stated in its 2001 Form 10-K:

> Our copyrights, trademarks, service marks, trade secrets, proprietary technology and other intellectual property rights distinguish our products and services from those of our competitors, and contribute to our competitive advantage in our target markets.  To protect our brand, products and services and the systems that deliver those products and services to our customers we rely on a combination of copyright, trademark and trade secret laws as well as confidentiality agreements and licensing arrangements with our employees, customers, independent contractors, sponsors and others.

### PRINCETON REVIEW'S UNLAWFUL CONDUCT

32.     Princeton Review has engaged in a deliberate course of conduct intended to compromise the confidentiality of AAMC's secure, copyrighted MCAT test forms, questions and answers.  Princeton Review committed these unlawful acts as part of its ongoing efforts to develop materials for use in its MCAT test preparation courses, and to promote the value of its products and services to prospective MCAT examinees.

33.    Specifically, Princeton Review solicited, encouraged and paid its employees and/or agents to take MCAT exams, memorize the secure, copyrighted questions and answers on the exams, and then help create a detailed report reconstructing the content of the questions and answers.   Princeton Review calls this process "tapping" the MCAT.   Princeton Review employees or agents who unlawfully memorize the MCAT are called "tappers."   After the tapping process is complete, Princeton Review compiles a master report from the individual reports of each tapper.   This is called the "Tap Report," and it contains the contents of secure, copyrighted questions from MCAT forms that have been administered by AAMC.   The Tap Report is copied and distributed within the Princeton Review organization for use by its MCAT preparation instructors in connection with subsequent MCAT exams.

34.    While AAMC does not know the full extent of Princeton Review's exam "tapping" activities, it has seen Princeton Review's April 2002 Tap Report.  The Report is 30 pages long and mirrors the structure of the April 2002 MCAT. The section titled "Verbal Reasoning" displays the reconstructed content of copyrighted, secure questions from the "Verbal Reasoning" section of the April 2002 MCAT.   The "Writing Sample" section identifies the questions that were asked on the "Writing Sample" section of the April 2002 MCAT.   The "Physical Sciences" section of the April 2002 MCAT Tap Report summarizes the types of questions included in this section of the MCAT, as reported by "all tappers," then sets forth approximately one hundred and eight (108) memorized and reconstructed MCAT questions. Included are reconstructions of the MCAT written passages and accompanying questions and reconstructions of the free-standing questions from this section.   The "Biological Sciences" section of the April 2002 MCAT Tap Report sets forth a brief summary of this entire section of the MCAT, as reported by "all tappers," then sets forth the reconstructed content of more than

seventy (70) copyrighted, secure questions from the MCAT, including both the written passages and accompanying questions, and the free-standing questions.

35.     The April 2002 Tap Report was distributed to all Princeton Review MCAT directors and Princeton Review MCAT instructors.  On information and belief, Princeton Review has also disclosed some or all of the reconstructed, secure MCAT questions and answers in the April 2002 Tap Report to individuals enrolled in Princeton Review MCAT test preparation courses.

36.     The April 2002 Tap Report makes reference to other "recent Tap Reports."  Thus, Princeton Review has apparently "tapped" other MCAT exams that were administered prior to the April 2002 MCAT.

37.     In addition, Princeton Review has apparently continued to create such Tap Reports.  The mechanics of Princeton Review's "tapping" process for the August 2002 MCAT were detailed in a July 8, 2002 e-mail authored by Steve Leduc, Princeton Review's Director of Research and Development for Medical Programs.  The e-mail was sent to all Princeton Review MCAT Directors with an instruction to forward it to all Princeton Review MCAT instructors. The e-mail actively solicits volunteers from among Princeton Review's MCAT directors and instructors to "tap" the August 2002 MCAT and write a report on its contents.  The e-mail begins: "One more time in 2002 – I'm looking for a few good tappers for this August's MCAT." The e-mail further states that "Tappers will be reimbursed the test fee, plus receive payment for taking the test and writing a report."

38.     Individuals who were available to "tap" the August 2002 MCAT were instructed to respond to Steve Leduc directly and answer a detailed set of questions.  According to the e-mail, after Steve Leduc heard from those individuals who were willing to "tap" the August 2002

MCAT, he would select certain individuals, contact them, set up the "tapping team," and then give each "tapper" "detailed information and instructions" for "tapping" the MCAT. The "detailed information and instructions" apparently would be given out only by phone, not e-mail.

39.    Princeton Review engaged in the "tapping" process and creation of the Tap Reports with the specific intent of assisting individuals who intended to take subsequent MCAT examinations, thereby promoting Princeton Review's commercial interests.  Princeton Review's actions compromised the "tapped" questions.

40.    Princeton Review uses the fact that its employees regularly take the MCAT as a selling point to encourage individuals to enroll in its test preparation courses.  For example, as part of its operations, Princeton Review maintains an internet website ("PrincetonReview.com") on which the following statements are made:

> We're constantly updating our materials to bring you fresh questions and current passages. Each year, we take the information we learn about the exam and write a new set of practice passages to reflect the style and content of the most recent MCAT exams.  No other course creates an MCAT's worth of new passages (about 220 questions in all) after the MCAT is given.

At the same, however, the Discussion Board Registration section of Princeton Review's web site was instructing discussing board users that they should not "Post any test questions.  That's illegal and they will be deleted."

41.    By engaging in the foregoing conduct, Princeton Review has copied and distributed for use by its instructors and, at least indirectly, by course participants copyrighted MCAT questions and answers that AAMC had not publicly released, and which AAMC plans to use on future forms of the MCAT.    At a minimum, Princeton Review's conduct has compromised test questions and answers from the April 2002 MCAT test forms.

42.    In addition, each Princeton Review employee or agent who "tapped" the MCAT made a knowingly false statement when he or she certified in writing on the MCAT answer form that he or she "agree[d] to the conditions set forth in the MCAT Announcement." Memorizing and reconstructing the secure, copyrighted contents of MCAT questions and answers explicitly violates both the confidentiality provisions and the Test Center Regulations and Procedures set forth in the MCAT Announcement, as described in ¶¶ 21-24 above.

43.    Each Princeton Review employee or agent who "tapped" the MCAT also made a knowingly false statement when he or she verified to AAMC that he or she was taking the MCAT for the purpose of preparing to enroll in a health professions school. The Princeton Review employees and agents who "tapped" the MCAT were not taking the MCAT for this legitimate purpose. Further, no Princeton Review employee or agent who "tapped" the MCAT applied for the required special permission from AAMC to take the MCAT. If any "tapper" had truthfully disclosed his or her actual reason for taking the MCAT in a request for special permission, AAMC would have refused to allow that individual to take the MCAT.

44.    The Princeton Review employees and agents who "tapped" the MCAT were expressly reminded at the time of taking the MCAT that they were engaged in unlawful behavior. Each MCAT exam proctor is routinely instructed to read the following passage aloud just prior to commencement of the exam:

> The MCAT is confidential and contains copyrighted material. You may not remove any portion of a test booklet or answer document from the testing room. In addition, you may not duplicate, record, or memorize any part of the MCAT.

45.    Princeton Review knew that "tapping" the MCAT and publishing the questions and answers from the MCAT test forms in the Tap Reports was prohibited, unlawful and could compromise future MCAT test forms.

30391029.2

46.     In its Form 10-K for the period ending December 31, 2001, Princeton Review acknowledged that it creates the materials used in its test preparation courses, in part, by having "designated personnel take virtually every major standardized test for which [Princeton Review] offer courses." According to its 2001 Form 10-K, this is to ensure that Princeton Review's "techniques and materials remain current." In addition, Princeton Review regularly solicits and reviews feedback from students taking its courses.

47.     At the same time, however, Princeton Review acknowledged that these business practices have risks. As Princeton Review stated in its 2001 Form 10-K:

> [C]ompetitors and others may claim that we have infringed their intellectual property rights. . . .We have been subject to infringement claims in the past and expect to be subject to legal proceedings and claims from time to time in the ordinary course of business, including claims of alleged infringement of the trademarks and other intellectual property rights of third parties.

48.     Princeton Review's actions compromised questions and answers from the April 2002 MCAT. On information and belief, Princeton Review has also compromised questions and answers from the August 2002 MCAT, as well as examinations administered prior to the April 2002 MCAT.

49.     Princeton Review does not need to use unlawful means to obtain actual MCAT questions for use in its classes.

50.     To assist individuals who intend to take the MCAT, AAMC offers MCAT practice materials for sale to the general public. These practice materials include actual, previously administered MCAT questions that have been retired; they do not include secure MCAT questions.

30391029.2

51.     From time to time, Princeton Review has ordered MCAT practice materials from AAMC (directly and through certain of its distributors/franchisees).   These publicly available practice materials are used in the Princeton Review MCAT test preparation courses.

## COUNT I

## COPYRIGHT INFRINGEMENT

52.     AAMC incorporates by reference ¶¶ 1-51 above as though set forth fully here.

53.     AAMC has created and published the MCAT in variant editions.   Each of these MCAT forms is an original work of authorship that is copyrighted under the laws of the United States on creation.   AAMC owns the copyright in each of these MCAT forms and in the questions and answers contained therein.

54.     Under the Copyright Act, 17 U.S.C. § 101 et seq., AAMC enjoys exclusive rights with respect to these test forms and the questions and answers contained therein, including the exclusive rights to reproduce, distribute, publicly perform, display, and create derivative works based on the forms and questions and answers.

55.     AAMC has been issued certificates of registration by the Register of Copyrights for the MCAT forms and questions described in ¶ 15 above.

56.     Princeton Review has not been authorized by AAMC to reproduce, publish, distribute copies of, or prepare derivative works based on MCAT test forms or test questions.

57.     Princeton Review has infringed AAMC's copyrights in various MCAT forms, including some or all of the test forms listed in ¶ 15 above and the questions and answers contained therein.

58.     Princeton Review's actions, as alleged above, have affected the public interest and have the potential for repetition.

59.     Princeton Review's infringement of AAMC's copyrights has caused AAMC financial harm and could cause irreparably harm to AAMC.

## COUNT II

## MISAPPROPRIATION OF TRADE SECRETS

60.     AAMC incorporates by reference ¶¶ 1-51 above as though set forth fully here.

61.     Princeton Review has acquired and disclosed AAMC's trade secrets, *i.e.*, the contents of its secure testing materials, by improper means in violation of D.C. Code § 36-401 et. seq.

62.     The MCAT is a "secure" test, meaning that the questions are confidential and have not been released to the public.  MCAT test forms, test questions and test answers are not intended to be made publicly available except during actual test administrations or under such other circumstances as AAMC has authorized.

63.     The secure MCAT test forms, test questions and test answers derive their economic value, in large part, from the fact that they are not publicly available and are not generally known to, or readily ascertainable by, other persons who can obtain economic value from their disclosure or use.  Because the tests are not publicly available, AAMC can re-use the secure items in different test administrations for the purpose of "equating" examination scores from one test to another.  By re-using certain of the secure test forms and/or test questions, AAMC can reduce the expense of developing MCAT exams.

64.     AAMC uses substantial efforts to maintain the security -- and therefore the secrecy -- of its test forms, test questions and test answers, including: registering its test forms, test questions, and test answers pursuant to the "secure test" regulations issued by the Copyright

Office; implementing detailed security procedures for shipping, handling and administering exam materials; reminding examinees during the administration of the MCAT that the test contains confidential and copyrighted materials that cannot be removed from the testing room and that cannot be duplicated, recorded or memorized in any part; and by requiring examinees to write out and certify their agreement to certain conditions contained in the MCAT Announcement, including the condition that test takers are not permitted to duplicate any part of the MCAT.

65.     By gaining access to AAMC's secure MCAT test materials, Princeton Review obtains substantial economic value:  it promotes its program by touting its regular access to secure MCAT exams, thereby increasing its revenues; and it uses the MCAT questions to prepare Princeton Review course materials, thereby reducing the costs that it would otherwise incur through the independent development of test preparation materials.

66.     Princeton Review used improper means to acquire knowledge of AAMC's trade secrets.  Princeton Review's employees and agents misrepresented that they were taking the MCAT in order to apply to a health professions school and falsely certified that they would protect the secrecy of the confidential and secure MCAT materials.

67.     Princeton Review's activities in misappropriating AAMC's trade secrets were willful and malicious.

68.     Princeton Review's activities in misappropriating AAMC's trade secrets are ongoing, and will not cease absent a Court injunction.

69.     AAMC has suffered actual loss based on Princeton Review's actions described above.  In addition, Princeton Review has been unjustly enriched by students who paid its enrollment fees.

30391029.2

## COUNT III

## FRAUD

70.     AAMC incorporates by reference ¶¶ 1-51 above as though set forth fully here.

71.     Through its employees and agents, Princeton Review has perpetrated a fraud on AAMC which was designed to promote Princeton Review's commercial interests by giving Princeton Review access to secure MCAT forms, questions and answers.

72.     Through the actions of its employees and agents who memorized and reconstructed the contents of the MCAT, Princeton Review made knowingly false statements to AAMC. Such statements were made each time an employee or agent signed the certification on the MCAT answer form stating that they "agree to the conditions set forth in the MCAT Announcement," and each time an employee or agent falsely verified in writing to AAMC that they were taking the MCAT for the purpose of preparing to apply to a health professions school.

73.     The Princeton Review employees and agents who made these knowingly false misrepresentations to AAMC were acting at the express direction of Princeton Review in the course of their employment, both for their individual benefit and the benefit of Princeton Review. Such representations were material, were false when made, were made by Princeton Review's employees, agents and/or representatives knowing them to be false, and were made for the purpose of obtaining access to confidential and secure MCAT test forms, questions and answers.

74.     Such representations were false when made, and were made with the intent that AAMC rely on them as if truthful. AAMC had a reasonable right to rely on the representations made to it by Princeton Review employees and agents, and in fact, AAMC did rely on the representations when it allowed the Princeton Review employees and agents to take the MCAT and gain access to the secure MCAT test forms, questions and answers. If Princeton Review had

not made these false representations, AAMC would not have allowed these individuals to take the MCAT.

75.    As a consequence of its reliance on the knowingly false misrepresentations of Princeton Review employees and agents, AAMC has been damaged.

## **PRAYER FOR RELIEF**

WHEREFORE, AAMC respectfully requests as relief in this action that the Court:

(1)    Enter a permanent injunction, as provided by 17 U.S.C. § 502 and other applicable law, prohibiting Princeton Review, alone or in concert with any employee, agent, representative, corporate affiliate, or third party, from:

(a)    infringing in any manner AAMC's existing or future copyrights by copying, duplicating, distributing, selling, publishing, reproducing, adapting, publicly performing, displaying, preparing derivative works based on, renting, leasing, offering, or otherwise transferring or communicating in any manner, orally or in written, printed, audio, photographic, electronic, or other form, including but not limited to any publication on the internet or communication to any agent, representative, employee or person, or any affiliate, or in any class, seminar, presentation, or written materials, any test question or answer that is identical or substantially similar to any test question or answer copyrighted by AAMC; or

(b)    instructing, counseling, advising, requesting, or suggesting that any person with access to, or intending to obtain access to, any AAMC MCAT examination disclose to defendant, to any entity affiliated with the defendant, or to any employee, agent, or representative of defendant or any entity affiliated with defendant, any AAMC MCAT test question or answer.

30391029.2

(2)    Enter an order, as specifically provided by 17 U.S.C. § 503, for destruction of all infringing copies of materials that include all or any part of any copyrighted AAMC test forms, test questions, or test answers, including but limited to all copies of all MCAT Tap Reports.

(3)    Award AAMC damages, as provided under 17 U.S.C. § 504, in the amount of the AAMC's actual damages plus any additional profits of Princeton Review; or, if so elected by AAMC prior to final judgment, in such amount as the Court deems just as statutory damages.

(4)    Award AAMC its costs incurred in this action, including reasonable attorneys' fees, as provided by 17 U.S.C. § 505 and any other applicable law.

(5)    Enter a permanent injunction, pursuant to D.C. Code § 36-402(a), prohibiting Princeton Review, alone or in concert with any employee, agent, corporate affiliate, or third party, from any actual or threatened activity of misappropriating AAMC's trade secrets, *i.e.*, its secure test items.

(6)    Award AAMC damages, as provided by D.C. Code § 36-403(a), to redress AAMC's actual loss as well as to recover any unjust enrichment by Princeton Review.

(7)    Award AAMC exemplary damages based on Princeton Review's willful and malicious acts of trade secret misappropriation, as provided by D.C. Code § 36-403(b).

(8)    Award AAMC compensatory damages and punitive damages based upon Princeton Review's fraudulent conduct.

(9)    Award AAMC such other relief as the Court may deem just and proper.

Respectfully submitted,

Robert A. Burgoyne
D.C. Bar No. 366757
Caroline M. Mew
D.C. Bar No. 467356
FULBRIGHT & JAWORSKI L.L.P.
801 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (202) 662-4513
Facsimile: (202) 662-4643

Dated:   March 21, 2003          ATTORNEYS FOR PLAINTIFF

30391029.2